The next case on the docket is En Re Estate of Siedler, 518-0574. Are you ready? Yes, Your Honor. Okay. Thank you, Your Honor. Good morning. State your name, just for the record. Yes, Your Honor. May it please the court, my name is Jonathan Cantrell. I represent Cody and Stephen Hopkins, the two primary legatees really in this estate on this issue, which I believe is relatively simple interpreting of one specific provision of the will of the decedent, I believe it's pronounced Siedler, but obviously counsel can correct me if I'm wrong. I think it's important to go briefly through the timeline. I always do that in all cases to paint a good picture of what happened here. So Mr. Siedler passes away in March of 2018. His will indicated that an appraisal should be awarded within 90 days of the date of his death. So that's done in May of 2018. An appraisal comes back valuing his 218-acre farm in Polk County at $371,000, which is roughly 1,700 an acre. On July 11th of 2018, his will is admitted to probate, and Ms. Shirley Bramlett is appointed executor. So that's the first day she gets authority to do anything under the will, July 11th, 2018. On the same day, David Bramlett, who is her son. I only want to correct you one thing. I had April 3rd that the will was submitted, but she didn't get appointed until July. Your Honor, they said that in a brief. What happened, I believe, is the will was filed at the circuit clerk's office on April 3rd. It's in the record. The order admitting the will to probate and appointing Shirley Bramlett as executor was on July 11th, 2018. I agree with that, but the will actually was on file. It was on file, yes, Your Honor. Yes, Your Honor. But obviously the decedent nominates the executor until the executor is appointed. She doesn't have authority. So on the day that she's appointed, her son exercises his option under the will to purchase the farm for the appraised value, and a gentleman named, his last name's Evans, submits a bid on only 40 acres of the farm at $2,000 an acre, and that raises the total purchase price by about $12,000. On July 19th, eight days later, David Bramlett agrees to match that bid, exercise his right of first refusal that is in the will, and the purchase price jumps up to about $383,000. In the meantime, my clients, who are Arizona legatees, or one of my clients actually, Cody Hopkins, orders a second appraisal. It's not in the record, but obviously he must disagree. He's ordering a second appraisal. That comes back at $398,000, which is $27,000 more than the initial appraisal. Not a huge difference, admittedly. On August 13th, so 33 days after the will's admitted to probate, Ms. Bramlett, the executor, files a petition seeking leave of court to sell the farm to David Bramlett, pursuant to his right of first refusal he exercised back on July 19th. Seven days after she files her petition, my client submits a bid with a letter from a bank. The bank says, we're willing to advance up to $500,000 for this purchase, and my client bids $491,000. So that's $108,000 more than what Mr. Bramlett had agreed to pay. The executor then amends her petition, doesn't take a position before the circuit court, says, let us know what we should do, which I believe is the proper thing to do as an executor. And the case is argued in November. On November 7th, 2018, excuse me, Judge Lieberman enters the order, interpreting the will as meaning that Cody Hopkins cannot be a bona fide third-party purchaser, as that term is described in the will. I found it interesting. I knew that the sale had closed. I did not mention it in my brief because it was not part of the record. You can't talk about that. Well, it's in the brief. Okay. Make that clear. Right. Thank you, Your Honor, for allowing me to continue there. They filed a brief, the executor, pointing that out to the court, that the sale closed eight days after the trial court entered their order. And I didn't plan on mentioning that. If anything, to me, the entire timeline from July 2018 to November 2018 really feels like a rush job. And I know there are deadlines within the will. Mr. Graham would only have 90 days to exercise his option. But if he is made aware of a third-party bid, he gets another 90 days to match that bid. So I think there was plenty of time. And, you know, with this matter having been disputed, obviously, why not wait 30 days until the order is final to close the sale? But that's neither here nor there, perhaps, based on the law. Well, certainly a motion could have been filed outside of the sale until it was appealed. It could have. I was not made aware of the sale until after it closed. Okay. Go ahead. Thank you, Your Honor. So the will, the important provision says, Article V, Paragraph 2, Upon completion of the appraisal, the executor is to notify David Bramlin of the appraised value, period. The next sentence is really what's at issue here. David Bramlin says, David Bramlin shall have the non-assignable option to purchase, for cash under the terms of this paragraph, my farm in Polk County, Illinois, or any portion thereof, for the appraised value or for the purchase price offered by any bona fide third-party purchaser, comma, whichever is greater, period. That's the sentence. That's the reason why we're here. It's clear that the intent of the decedent is to sell to a high bidder. To sell to either Bramlin or a third party. Correct, Your Honor. A bona fide third-party purchaser. But when it comes to setting a price, he wants to sell, generally speaking, to a high bidder. And the definition of third party that's cited in Mr. Bramlin's brief includes, and we cite the Black's Law, and either side could find some case law that addresses this issue exactly, this particular type of language. But in Black's Law, the definition of third party includes a third party to a particular transaction, not just in a state or litigation. And I believe that's the appropriate definition here. What Vincent Seidler is contemplating is David Bramlin buying his land. He gives him a right of first refusal. But a third party means anyone else, anyone other than the estate and David Bramlin, who are about to contemplate this transaction. Why do you think he inserted the word bona fide in there, then, if it could be any third party? Well, bona fide means good faith, obviously. And so that's one of the arguments they make, which is that, allegedly, my guy's not a good faith guy. He's coming in and he's playing with house money. And so, obviously, Mr. Seidler wanted someone to not artificially drive up the price. I agree with that. But my client got a letter from a bank that he attached to his bid. And we asked the trial court, and we're also asking this court, you know, if the court determines that Mr. Bramlin should not have an additional 90 days to match Mr. Hopkins' bid, we have no problem with the court ordering the sale to go through my client for the amount he bid. We have no problem with that, Your Honor. So I agree that it has to be a good faith third party purchaser. But I also submit to the court that there's no evidence that my client offers anything other than in good faith. And third party really is someone other than the two parties to a contemplated transaction between David Bramlin and the estate. So you're saying that one of the reasons your client was a bona fide purchaser, a good faith purchaser, is because he backed up his offer with a letter from the bank, not just some random offer out there. Yes, Your Honor. The letter from the bank certainly supports the position that he's making this offer in good faith. And the other thing that supports it is that, you know, we would love nothing more than an order saying the sale should have gone through to him. Although I believe the way the will should be read, excuse me, is that when David Bramlin is given notice of a third party's offer, David Bramlin gets 90 days to match it. That's a right of first refusal he gets. And one of the arguments raised in the Bramlin briefs is that, you know, Vincent Cesar obviously intended to give something of value to David Bramlin. And I could not agree more. I agree 100 percent. But what he's giving him is a right of first refusal, which means he gets to match any high bid. He gets an additional 90 days. That is something of value. But why would he inject in his will whichever is greater? Why would he inject that when he's talking about the purchase price? He obviously wanted to give his, I believe they're neighboring landowners in a rural area, give his neighbor a benefit while protecting his heirs and his legatees, ensuring that they get the most money that they should be able to get. And obviously we cite some longstanding principles. I think there's an 1888 case, Corrington v. Corrington, where the Supreme Court says generally speaking when an executor is managing real estate or selling real estate, their fiduciary duty to the state and to the beneficiaries is to try to obtain the highest price that is reasonably attainable. And one of the cases I think that helps a lot, although admittedly there are no cases that are on point, with the language, is the Perry v. The State of Carpenter case, which counsel pointed out involves a guardianship of a disabled adult, I believe. I don't believe it was a minor. But the court in that case repeatedly cites to Article 20 of the Probate Act, which is the article dealing with administration of real estate and supervised administration. And in this case, when the executor petitions the trial court for guidance as to how the sale should go through, given the competing bids, under Section 28-5 of the Probate Act, the executor surrenders for discretion. And the trial court became the de facto vendor, and the trial court is supposed to substitute its judgment for that of the executor and do what's best for the estate while being consistent with the terms of the will, of course. And Perry v. Carpenter, there's a couple of ‑‑ there's some language here that's helpful in illustrating the depth of the concept of equity when we're in probate and how important it is to try to do the right thing for the estate. And the court states that although a judicial article abolished the distinction between courts of law and equity, the probate court historically is the repository of equitable powers. And I'm reading from the opinion. When equitable interests intervene, those interests supersede all else. If there is a clash between a rule of equity and a rule of law, the former, of course, prevails. That's a quote from Perry. And Perry goes on to say, an unbroken line of precedent clearly supports the assertion that a probate court may disapprove a sale and order a resale if that action would be in the best interest of the estate in question. And what the court did in Perry was you had a situation where an attorney was going to purchase the ward's real estate and the GAL knew that the real estate was worth more, and I think there was a third party interested in paying $50,000 more. And the GAL, on behalf of the ward, tried to void the contract by saying they didn't satisfy a mortgage contingency provision. And the appellate court said, no, the court can't void that because the mortgage contingency provision is for the benefit of the buyer. In other words, if the buyer can't get the financing, they shouldn't be forced to go through with it. And in the Perry case on that last day, the buyer said, I'm waiving that provision. I still want to go through with the transaction. So the appellate court in Perry says, you could void the contract, lower court, but it's so obvious that this was the right thing to do and because probate courts have broad equitable powers, we're going to affirm you and you were right to void the sale so that the sale could go on to another person for $50,000 more. Could you address for us the conclusion by the trial court that bona fide purchaser must mean someone not connected to the will? What do you think about that? I just couldn't disagree more on it. I'm not making a statement. I'm asking you to address that conclusion. Sure. Well, that's the – Do you disagree with that trial court conclusion? Yes, Your Honor, I do. And this shifts gears a little bit, but it is about the trial court's order in paragraphs 5, 7, and 8. There's language where the trial judge says he's not a third party, so he can't make an offer, but if hypothetically David Bramman did not exercise his option or his right of first refusal and the executive would then exercise her discretion under the will to sell out of public or private sale, the trial judge says, well, in that case, the Hopkins brothers could make bids. And that just doesn't make a lot of sense to me. Where does it say that? I believe it's in paragraph 7. A42 of the appendix is the page of the order. It is logical to conclude that a third party must be someone not connected to the estate. The executor, beneficiaries, and electees are all connected to the estate, leaving out the requirement of a bona fide third party purchaser that the public or private sale is consistent with this interpretation. Beneficiaries or electees could make offers or bids at a public or private sale. I didn't understand that line. I don't either, Your Honor. The only thing I can – what it's saying, the last sentence in that paragraph, beneficiaries or electees could make offers or bids at a public or private sale. And the will says – let's jump back up to paragraph 5. That helps, I think. There's no requirement in paragraph 2 of article 5 that the executor sell to any bona fide third party purchaser if such a purchaser makes an offer. I disagree with that, first of all, because Vincent Seidler said, you sell for the appraised value of Mr. Bramlett or the amount offered by a third party, whichever is greater. And that language, whichever is greater, is crucial. The decedent wanted to sell to the highest bidder. Moving on, in fact, if David Bramlett does not exercise the option to purchase or if he does not close within 90 days, the executor shall, in her discretion, sell the property at a public or private sale. And that's taken from the will. But the word shall, comma, at her discretion, seems to give and take it away. Shall might be mandatory there, but then at her discretion is kind of like, okay, maybe not. I agree. And although he did take that language from the will, so I'm not attacking the trial judge's logic for rewriting that there. But it just doesn't make sense to say, Mr. Hopkins, you cannot make an offer, you're not a bona fide third party, that Mr. Bramlett has to match. But if the property was sold to Mr. Bramlett, then, yes, you would be able to make an offer. That's what the trial judge said, and it just doesn't make sense. Do you think that could be a scrivener's error? The way it's written, I don't think. And if a scrivener's error could not make offers for it? I don't think so, Your Honor. I really don't. It could be, of course. I mean, I don't know. But I don't the way I read it. If it was a scrivener's error, it would be consistent then. It would be consistent, but I think that paragraph 7 is not the only one where he sort of said. No, I know. That's just conjecture. Okay. Okay. I think in paragraph 8, he goes on to essentially say the same thing. Cody Hopkins and or Steve Hopkins, this is paragraph 8 of the trial judge's order, at the end of paragraph 8. So, my clients, without the tag of bona fide third-party purchasers, would be free to make an offer at a private sale or bid at a public sale. At that time, if they want to play with house money, they would not be frustrating the intent of paragraph 2 of Article 5 of the will. So, clearly, the trial judge said, you're not a third party. You can't make a bid when David Bramlett's exercising his option. But if that fell through, then you could. It just seems inconsistent with the testator's general intent to sell to the highest bidder. But what if the intent was to ultimately get that property to Mr. Bramlett? Good question, Your Honor. And if that was the intent, then I don't think the will would say, or for the purchase price offered by any bona fide third-party purchaser, whichever is greater. And actually, there's a case that Mrs. Bramlett cited in her brief, Estate of Link, which illustrates exactly one of the arguments we made before the trial court. In Estate of Link, the will said, I want the property sold to my, I think it was niece and nephew, for $100 per acre less than the appraised value. So they set a price. Just in this will, the decedent could have said, I want this property sold to David Bramlett for the appraised value, period. He didn't have to add or for the purchase price offered by a bona fide third-party, whichever is greater. In Estate of Link, the reason why they disputed the sale, some time had passed from the date of death until the sale was going to be consummated, and everybody agreed the value of the property had increased dramatically. So other parties were saying, this is not right. The niece and nephew should not be able to purchase this for $100 per acre less than the appraised value. But that was what the will said. I want this property to be sold to my niece and nephew for $100 per acre less than the appraised value. What do you, I mean, you've got an individual who raises the price, even the second appraised value, by almost $100,000. And, I mean, would that alone, just the fact that he offered $100,000 more than the second appraisal, give rise to a question regarding his good faith? No. And the reason why is because he's apparently got the financing and he's willing to pay it. So the bottom line is what's best for the estate without being inconsistent with the instructions we have in the will. And what's best is clearly to take $108,000 more. But if the executor of the estate, the independent administrator, thought that this offer was a ruse, for example, then her filing of this petition saying, what do I do, would be appropriate. Sure. And then she surrenders her decision-making capability to the court. I agree with that, Your Honor. She surrendered her discretion. She didn't take a position. I found it interesting that they, and maybe it's because the sale is closed, that they've taken a position at this stage. I don't have a citation for any of this, but I recall thinking, reading maybe secondary sources, that's what an executor should do is not take a position. I see that my time is up. What relief are you asking for specifically? I think the, so the trial court's determination was that Cody Hopkins is not a bona fide third-party purchaser. And if that interpretation is changed, then his bid was valid and the property should have been sold to him. But I acknowledge that the will says David Bramble should get 90 days to match that. So you haven't told me what relief you want. You want the sale, the order of sale vacated? Yes, Your Honor, I do. Do you want Mr. Bramlett to be given 90 days to either accept or reject the offer of $491,220? I'm fine with that. I'm saying that's probably the most equitable thing to do for Mr. Bramlett. But what I'm ultimately really asking for is an interpretation of third-party purchaser that does not exclude my clients. Okay, but that's not relief, so. And setting aside the sale. Thank you very much. Thank you, Your Honor. Okay, I understand you're going to split some time. Yes, Your Honor, I will split. I just plan on 10 minutes each. Okay. I went over a little bit with Mr. Cantrell, so I'll give you an extra minute on each hand. I expect we will be brief. Okay. May it please the Court, Your Honors, my name is Craig Reeves, along with my co-counsel, Michael Toomey. We represent the estate of Seidler. And we're obviously here to ask the Court to affirm the judgment of the trial court. There are two main principles that are in play here. The first is the overarching policy of trying to maximize the dollar return to an estate. That is ordinarily the law and that would ordinarily guide the Court. But that general principle has been varied by the language in the testator's will that obviously invokes the second principle that we've got involved in this case, which is that there was a very clear intent to confer a benefit on Mr. Bramlett and to allow him to have an opportunity to purchase this property, not through a competitive bidding process, but at the value of an appraisal that came in or, as happened in this case, if another purchaser proposed a price that was in excess of that appraisal, he would have to meet that. There's been discussion of a right of first refusal. I think what was granted to Mr. Bramlett was more properly characterized as an option. And, in fact, the will does use the term option rather than right of first refusal. It does not contemplate that there has to be a competitive bidding process. It does not contemplate that there has to be another offer to be met. It is an option to buy at the price that's been established through an appraisal or through a bona fide third-party purchaser. Whichever is greater. Whichever is greater. That's correct. And so the overall general principle that's embodied in the probate code, that you want to maximize the return to the decedent's estate, doesn't apply to this part of it. He has been favored by the testator. He's been given something of value. And it's clear from the language of that that he has the opportunity to avail himself of that benefit. If he doesn't, then the executor can sell it public or private sale. All of the qualifying factors of a bona fide third-party purchaser do not apply in that situation. And I would submit that that discretion that's granted to the executor should be read that she has the discretion to conduct either a public or private sale at her own discretion. That's what the language means. But we didn't make it to that point. We had Mr. Brownman exercise his option. That was completed. And the argument that arises is Mr. Hopkins a bona fide third-party purchaser. There's no statement that the Hopkins are heirs and negatees under the will. A third party, I would submit, describes someone who is not interested in the estate. And Judge Lieberman pointed that out, I thought, in a pretty apt way. He said the first party is the executor. The second party is any beneficiary. In this instance, Hopkins is a second party. He is not a bona fide third-party purchaser. Bona fide to a certain extent. But where do you go with that argument, that line that these are not interested? Why does he then give them the option to purchase later in his order? In his order, he does say that at a public sale they might be able to purchase. Well, and that tracks the language of the will. The judge was simply implementing the provision of the will that says if Mr. Brownman doesn't close on that option within 90 days of his exercise, it will terminate. That option then is gone. The provision favoring Brownman is no longer in effect at that point. We're back to every other sale of real estate out of every other estate. And it doesn't much matter whether someone has an affiliation with the estate or not. The court's determination or the independent executive's determination simply becomes how do I maximize the return to this estate? But that's not what happened here. You know, the testator could have directed a sale to the highest bidder with 90 days to submit bids, and he didn't do that. He didn't, in fact, require that any bids be submitted at all. He contemplated that there might be a third-party bona fide purchaser. In fact, there was for a portion of this estate, of this real estate. But he did not, you know, create a bidding process to maximize the dollar return to the estate. We cite the Link case, and the Link case stands mostly for the proposition that where a testator wants to confer a benefit on an individual, he'd call it a sweetheart deal in more common parlance. You know, that's within the testator's ability to direct the disposition of their estate. The Link court called it giving something of value, something of value was given to them, Mr. Bramlin in this case. You know, as for the timing, there's no obligation on the executor's part or on the trial court's part to wait any particular time. Those 90-day provisions are to exercise the option and to close on the exercise of that option, and they don't have anything to do with soliciting bids or allowing a third party to have an opportunity to step up and bid for the property. Mr. Reeves, if this offer of $491,000 had been made by someone else that was not a legatee, you think that the 90 days would apply? You would have, Mr. Bramlin would have 90 days from the time that offer is made to exercise the option? Assuming that third party met the qualifications of a bona fide third party purchaser, yes. Well, again, we get back to two issues, bona fide and third party, right? Yes. Bona fide meaning good faith. I guess your property could be deemed to be whatever one's willing to pay. Sure. And, you know, I guess bona fide, ordinarily we would consider that to mean willing and able to have the means to do it. I don't think there's any doubt that the appellant had the means to do this. They apparently had some financing lined up. But what they were not was a bona fide third party purchaser because they're in the estate. So do you have any quibble with the fact that they were bona fide, that this offer was in good faith? I mean, it had a letter from the bank, it had financing lined up? I do not have any doubt that that was, you know, assuming you define bona fide the way I would and the way I'd ordinarily discuss it with my colleagues, can they do it? Do they have the money? Or is this somebody that's just going to an open house and saying, I'm going to buy this house with no means to complete that contract? So I think the trial judge's ruling was well considered. It attempts to put into effect the language of the will, which quite clearly conferred a benefit on David Bramlin. Mr. Bramlin availed himself of that. The court approved that. And as we stated colloquially, it's not in the record, but the sale did close and was completed. It appears that the judge put into effect the testator's wishes under his will. And for that reason, we ask your honors to affirm the trial court. Okay. Thank you. Thank you. Mr. Twohy. May it please the Court. Your Honor, Mark Johnson. I represent my friend, Dave Bramlin, the buyer of this property. The first point I wish to make is Mr. Hopkins' argument wrongly focuses on only one dimension or aspect of the fiduciary responsibilities of an executive estate, and that is to get the best price. Now, that's certainly the case in a situation like a guardianship where you've got a disabled adult or you have a minor. And that's the case they cited, the Perry case. That's not applicable here for one very good reason. In Perry, we've got a guardianship, and we have no directive from somebody like we do here, the testator, about the methodology or way they want to go about having that property sold. So the person representing, in this case the guardian in Perry, had the obligation to get the best deal or best profit or best use of the property that was being sold for the benefit of the ward. That's not the case here because, in this case, the executor was following the wishes of the testator. It's his wealth. He's acquired it. He can set any methodology, any paradigm, any protocol he wants about how somebody can acquire his interest. Now, it's interesting here that his next-door neighbor, Dave Bramlin, who he had a relationship with, obviously, and one that he had his own mother appointed as executor, wanted to give him the benefit to go, you know, you can buy the ground at appraised value, at two appraisals, or a third party, a bona fide third party. So it becomes a situation here where we're construing basically this will, and it's a question of law. What did the testator mean when he wrote bona fide third-party purchaser? I tend to focus more on the third-party part of this because I think it's the easier one for the court to rely on, and I think maybe Judge Lieberman went out on a whim. He didn't need to have to go out on to talk about who could buy the property in the event that, you know, that my guy didn't buy it. But in this situation, third party has to mean something. I was shocked that I couldn't find anything about defining a third party. You've seen such a fundamental concept. Surely, with the case law that exists in this state, you'd find something you didn't. And so I was forced to look at Black's Law Dictionary and cite that to the court, and it's common sense. But the only – it talks about a third party being someone not a party to a lawsuit, an agreement, a transaction, or someone not a principal. And then it says also term an outside party. Well, the only two parties – and I argued this in court to Judge Lieberman. He adopted that argument, which basically is that you've got the testator, who is now then obviously represented by the interests of the executor. That's one party. The other party are the beneficiaries. Everybody else would be the third party. The Evans gentleman showed up and wanted 40 acres and two grand an acre, was a legitimate third-party purchaser. He was not a party in any respect to the will. He wasn't the executor. He wasn't a beneficiary. He qualified, and that offer was matched. In this situation, though, it's different because here we've got a beneficiary bidding $100,000. What did the beneficiary get in this case? What was the – what did he – what was given to the beneficiary? The beneficiary – they got a third of the residuary cost. There were some charitable gifts, Your Honor. Justice Welsher was a charitable gift, but then there was this – there was the appellant and his brother, the two Hopkins, and I can't remember the name of the third beneficiary, but they were the residuary legatee. Okay. And where it came – and where this struck me, and I know Justice Cates made the observation, was I'm going, wow, 100 grand more? That's a little suspect. It reminds me of a case I had years ago about a buy bidder. What? A buy bidder? A buy bidder. I didn't know the term either. It's where you – and I actually experienced it myself trying to buy some grand. You're talking about a sale, a little sale? Yes, ma'am. That's exactly what I was talking about. I was trying to be polite using the term that was there. I actually participated in a sale myself trying to buy some grand next to me. I found out later that there was a gentleman in the room representing the broker running the bid up in the law, and that's pretty straightforward. Comes all the way to the United States Supreme Court back in 1800 and says, no, the last legitimate buyer is the guy that gets it, and that's another story. But my point is, in this circumstance, you don't have to work the case as hard as Judge Lieberman did to affirm the decision. It's simple. This testator decided he wanted to favor his next-door neighbor with the ability to buy this property at a fair price. So he said, I want two – I want an independent appraiser. He got that. Andy Clark from Martini Appraisal appraised it. Obviously, Mikey got another one, which was just a few thousand dollars. Mike and my guy ran them. We matched both of them. And then a third-party purchaser showed up. Okay, as to 40 acres, we didn't quibble. We'll match that. And then out of the blue, for that matter, the Hopkins guy shows up with a letter from the bank and says, we want to pay you 100 grand more. At that point, the testator's wishes are being frustrated because he's not somebody that the testator expected to be able to bid. Now, what happens after? Mike, hypothetically, I don't know if the judge has to ask this question. I don't think it really matters to resolve this case. That's not really a point. The executive would have the power to run a private sale, petition the court to sell it within two-thirds of its appraised value. They'd have a public sale. That doesn't matter. The question is, you have to give meaning and effect. That trial judge had to give meaning and effect, and this court does too, because this refused to know on the construction of the will, which is a question of law. You've got to give meaning and effect to every phrase or word there. And they cannot address, Mr. Hopkins cannot address the argument that third party means something. And Judge Whitman got that right. Third party means something other than somebody showing up to buy, and it makes perfect sense. The testator wanted his neighbor to be able to buy it at a fair price so he could benefit these other beneficiaries, but not at some exaggerated price that could be the subject of a suspicious bid that's 100 grand higher. But we don't need to get to that to resolve that problem. One of the other things that I didn't brief was, I think, a contract. You didn't brief it. No, no. You're right. It's in the record. It's in the order that Judge Whitman entered that he said, I'm not going to rule on whether a contract existed at the time. I didn't raise that in a brief as another reason for affirmation because I think all you need to affirm this is the third party construction, and I think it requires the court to affirm Judge Whitman's judgment in the trial court pro camp. Thank you. Thank you, Mr. Johnson. Thank you. Rebuttal? Thank you, Your Honor. Third party does mean something, Your Honor, and as we stated in our reply brief, the definition from Black's Law, and ideally we don't like to go to Black's Law, but we don't have much of a choice here. Third party is one who is not party to a lawsuit, agreement, or other transaction, but who is somehow involved in the transaction. So in this case, it's the other transactions between David Bramlin and the estate. He's somehow involved because he's a beneficiary of the estate. He fits perfectly in that definition of third party. And Justice Welch, you asked about what Mr. Hopkins is getting under the will, and it amounts to less than 50% of the estate, so he's paying more than 50% out of pocket, whether he gets financing and pays interest on it or he has the money. I don't know, but that's going to inure to the benefit of the other beneficiaries. His brother, a couple of churches, and a couple of cemeteries are also staying to recover part of that purchase price. Affirming the lower court is essentially putting an imprimatur on a transaction that was agreed upon eight days after the will was admitted to probate. It was eight days after that Mr. Bramlin matched Mr. Evans' bid, and you've got the executor selling to her son within eight days. We don't know, obviously, but it makes you wonder what efforts were made to locate third party purchasers. The court had asked me about relief. What efforts do you think had to be made? There was no indication in the will, and somebody did come forward. I mean, obviously, it's a small town. They know this gentleman has passed away. They probably know the forms for sale. Sure, and I'm not a realtor. I don't know what efforts would be proper, and there's no evidence. No, for the estate, Mrs. Bramlin. I'm sorry, Your Honor. Do you think she had to advertise it? I think she had to reach out, and maybe she did. We don't know, but I think she should have made some effort. But the will gave her the discretion to even sell this at a private sale. If David Bramlin doesn't exercise that right. Ultimately, there was no indication. There were no directions. Sure. You're right, Your Honor. And let's say hypothetically it goes to a private sale, and she sells it for a low price. In that case, I think she breaches her fiduciary duty to the beneficiaries of the estate. So I do think because Vincent Segal wanted it sold to the highest bidder, whichever is greater the language he used, she had a duty to search for potential buyers. And I don't know what would be sufficient or insufficient. But if, as Mr. Johnson argued, this case comes down to who is a third party, then that would control the outcome of the case, as to your client. It would, as to my client, yes, Your Honor. Although David Bramlin gets the opportunity to match my client's bid. Assuming he's a third party. Correct, correct, yes. If he's not a third party, then the court would be affirmed. Correct. So one or the other. I agree, Your Honor. If Cody Hopkins is not a third party, the court is affirmed. And as to your question earlier when I was up here about relief, the Perry case that I've cited states, equity will not suffer a wrong without a remedy, and the remedy to be enforced must suit the facts of the particular case in question. So in this case, I think it's determining that Cody Hopkins is a bona fide third party purchaser and undoing the sale that went through after the trial court's order. The last thing I'd like to say, Your Honors, is that when I went to law school, obviously, they assign you all the controversial, well-known cases. And when you read those cases, there's a lot of interesting results, but I knew I was going to enjoy the practice of law when I saw what courts do when it comes to interpreting statutes, contracts, wills, in order to reach the right result. And we're not asking the court to strain here. We're just asking the court to use the definition of third party, the only one we found, to say Cody Hopkins is a third party to the contemplated transaction between David Bramlin and the estate. We're not asking the court to strain to reach the right result, the equitable result. And for those reasons, we ask that you reverse your old court. Thank you for your time. I just have one question. I know my colleagues want to go. I just have one question, and that is do you think the fact that he distinguishes between legatees and third party purchasers isn't significant in the will? Do you think there's any relationship between that? And are you talking about a particular provision, Your Honor, of the will? In the controlling provision about the sale of a farm, he does not mention legatees one way or the other. Actually, he doesn't really use the word legatees. He talks about the people, individuals. Right, Your Honor. He doesn't use the word heirs either. So I do believe that because he clearly wanted to sell the highest bidder, when he said third party, he meant anyone other than the estate and David Bramlin. Okay. Thank you, Your Honor. Thank you very much. All right. We'll take this matter under advisement. We'll issue an order in due course. Thank you for your arguments. We will be in adjournment until 1.50 p.m.